THE KARLIN LAW FIRM LLP
L. Scott Karlin (SBN 90605)
Michael J. Karlin (SBN 272442)
Rex T. Reeves (SBN 136842)
13522 Newport Avenue, Suite 201
Tustin, California 92780
Telephone: (714) 731-3283
Facsimile: (714) 731-5741
lsk@karlinlaw.com; mike@karlinlaw.com;
rex@karlinlaw.com

Attorneys for Defendant
LIFETIME BRANDS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW BARACCO, an individual,<br><br>              Plaintiff,<br><br>    vs.<br><br>LIFETIME BRANDS, INC., a Delaware Corporation, and DOES 1-10, inclusive,<br><br>              Defendants. | Case No.<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT**<br><br>(Los Angeles County Superior Court Case No. 21STCV00129)<br><br>Complaint Filed: 1/04/2021 |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

   **PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. sections 1331, 1332, 1441, and 1446, defendant Lifetime Brands, Inc. ("Defendant") by and through its attorneys, hereby removes to the United States District Court for the Central District of California, the above-captioned matter of *Andrew Baracco v. Lifetime Brands, Inc., a Delaware Corporation, and Does 1-10, inclusive*, which is currently pending in the Superior Court of the State of California for the County of Los Angeles, Case No. 21STCV00129 (hereinafter the "State Court Action").  As set forth below, removal is proper under two separate and independent bases: (1) federal jurisdiction pursuant to diversity of citizenship; and (2) federal question jurisdiction.

## FILING OF THE COMPLAINT

   1.   On January 4, 2021, plaintiff Andrew Baracco ("Plaintiff") commenced an action in the Superior Court of the State of California for the County of Los Angeles, Case Number 21STCV00129, by filing a Complaint entitled *Andrew Baracco v. Lifetime Brands, Inc., a Delaware Corporation, and Does 1-10, inclusive.*

   2.   While the Complaint in the State Court Action (the "Complaint") is drafted so as to appear to assert only a single claim for violation of the Unruh Civil Rights Act ("Unruh Act"), it asserts violations of both the Unruh Act (Complaint ¶¶ 60-62) and the Americans with Disabilities Act ("ADA") (Complaint ¶ 62).

## TIMELINESS OF REMOVAL

   3.   Plaintiff served Defendant with the Complaint by way of personal service on January 19, 2020.

   4.   As such, this Notice of Removal is filed within the time period required under 28. U.S.C. §1446(b).

# REMOVAL JURISDICTION BASED ON DIVERSITY

5. The Court has diversity jurisdiction over this action under 28 U.S.C. section 1332(a)(1). As set forth below, this action is removable pursuant to the provisions of 28 U.S.C. section 1441(a), as the amount in controversy exceeds $75,000, exclusive of interest and costs, and the controversy is between citizens of different states.

**A.   Diversity of Citizenship**

6. There is complete diversity of citizenship between the parties for purposes of federal jurisdiction because (1) Plaintiff is a citizen of California, and (2) Defendant is a citizen of Delaware and of New York, as follows:

7. Pursuant to 28 U.S.C. section 1332, "a corporation shall be deemed to be a citizen of any State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c). A corporation's "'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities," *i.e.*, the corporation's "nerve center." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010). The "nerve center" is normally where the corporation maintains its headquarters. *Id.*

8. In this case, Defendant is a Delaware corporation (Complaint ¶ 1). Defendant's principal place of business is in the State of New York, with its headquarters located in Garden City, New York at 1000 Stewart Avenue, Garden City, New York 11530. Accordingly, Defendant is a citizen of Delaware and of New York for purposes of diversity jurisdiction.

9. To establish citizenship for diversity purposes, a natural person must be both (a) a citizen of the United States and (b) a domiciliary of one particular state. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Residence is *prima facie* evidence of domicile. *See State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994). Here, Plaintiff resides in Los Angeles County, California. (Complaint ¶¶ 14-15). Defendant alleges that Plaintiff is a citizen of the United States.

10. Accordingly, for the purposes of removal, Plaintiff is a citizen of the State of California. Hence, there is complete diversity of citizenship between the parties.

**B.  Amount In Controversy**

11. The amount in controversy in this case exceeds $75,000. Indeed, as discussed below, it is many times this amount.

12. While Defendant denies any liability as to Plaintiff's claims, the amount in controversy requirement is easily satisfied if, as is clearly the case here, "it is more likely than not" that the amount exceeds the jurisdictional minimum of $75,000. *See Sanchez v. Monumental Life Ins.*, 102 F.3d 398, 403-404 (9th Cir. 1996) (discussing whether "it is 'more likely than not' that the amount in controversy exceeds [the threshold] amount") (internal citation omitted). As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (the district court may consider facts presented in the removal petition).

13. Importantly, "[s]ection 1332(a)'s amount-in-controversy requirement excludes only 'interest and costs.'" *Gugliemino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007). Thus, the amount in controversy not only includes "compensatory damages," but also includes statutory penalties, injunctive relief, attorneys' fees, and other various forms of relief. *Id*. Defendant is not obligated to "research, state, and prove the plaintiff's claims for damages." *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994).

14. Defendant can establish the amount in controversy by citing the allegations in the Complaint, or by setting forth facts in the notice of removal that demonstrate that the amount in controversy "more likely than not" exceeds the jurisdictional minimum. *See Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997); *Conrad Assoc. v. Hartford Accident & Indem. Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998). In the event that removal is challenged, the Court may consider "summary-judgment-type

evidence relevant to the amount in controversy at the time of removal," such as affidavits or declarations. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).

15. In measuring the amount in controversy, a court must assume that the allegations of the Complaint are true and that a jury will return a verdict for Plaintiff on all claims made in the Complaint. *See Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). The ultimate inquiry is what amount is put "in controversy" by the Complaint, not what the defendant will actually owe. *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005); *see also Scherer v. Equitable Life Assurance Society of the United States*, 347 F.3d 394, 399 (2d Cir. 2003).

16. Defendant provides the following calculations only to demonstrate that the amount in controversy in this case easily exceeds the jurisdictional requirement. Defendant makes no admission of any liability or damages with respect to any aspect of this case. To establish the jurisdictional amount, a removing defendant need not concede liability or damages. *Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

17. Plaintiff alleges that Defendant's website violates the ADA and the Unruh Act because it supposedly is not "readily and fully accessible to and usable by blind and visually impaired individuals." Plaintiff seeks *inter alia* a permanent injunction (as well as a preliminary injunction), an award of damages, and an award of attorney's fees, all of which are awardable under the Unruh Act to a prevailing plaintiff (California Civil Code Section 52(a)). As discussed below, the amount in controversy easily surpasses the $75,000 jurisdictional threshold many times over.

> **1. The Injunctive Relief Sought by Plaintiff Alone Places the Amount in Controversy *Well* Over $75,000**

18. The amount in controversy in this case vastly exceeds $75,000 based on the value of the injunctive relief sought by Plaintiff alone.

19. When a plaintiff seeks injunctive relief, the pecuniary value of such relief is included in the amount in controversy. *See Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018) ("The amount in controversy may include damages . . . and the cost of complying with an injunction") (internal quotation omitted).[1]

20. More particularly, Plaintiff requests that the Court issue a permanent injunction (as well as a preliminary injunction) that would require Defendant to remediate all of the alleged violations on the website in question -- which consists of over 2,100 separate webpages -- "to make [it] readily and fully accessible to and usable by blind and visually-impaired individuals." (Complaint at 16:18-23.) Plaintiff purports to limit the cost of the injunctive relief to $15,000 or less. (*Id.*, Complaint ¶ 63.) This supposed limit makes no sense, however. If it takes more than $15,000 to make the website "readily and fully accessible to and usable by blind and visually-impaired individuals," then the value of the injunction will be more than $15,000. The injunction would make no sense if, say, $15,000 spent on the website made it only partially accessible to blind and visually-impaired individuals.

21. The $15,000 figure is particularly absurd in the present case. Plaintiff's Complaint contains significant demands with respect to changes to Defendant's website that, if ordered by the Court, would alone exceed -- *by far*-- the $75,000 jurisdictional threshold. (Complaint at ¶¶ 30 through 43.) These demands include adding screen reader technology that can translate visual information on a website into nonvisual formats such as synthesized speech and refreshable Braille, compliance with the demanding "guidelines" of the Web Accessibility Initiative, and compliance with standards in Section 508 of the Rehabilitation Act. This work includes adding invisible

---

[1] In the Ninth Circuit, the value of the injunction for purposes of determining the amount in controversy is assessed from "either viewpoint" -- that is, the amount that either party can gain or lose from the issuance of the injunctive relief. *See In re Ford Motor Co./Citibank (S.D.), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001).

alt-text to graphics, ensuring that all functions can be performed by using a keyboard and a screen reader, ensuring that image maps are accessible, removing empty links or headings, removing documents that so not allow screen readers to properly read text, and adding headings and links.

22. While Defendant does not concede that Plaintiff is entitled to the work demanded, by demanding that the court issue an injunction ordering the completion of such work, Plaintiff has put the amount in controversy in this case -- even setting aside the damages and attorney's fees in controversy in this case -- at between $400,000 and $500,000, if not more. More particularly, after reviewing the work demanded by Plaintiff and analyzing the matter, the President of Digital for Lifetime Brands, Kevin Clisham, estimates the cost for Defendant to make the changes demanded to the *over 2,100 webpages* on its website would be no less than $200,000. Then, Mr. Clisham estimates, it would cost approximately $2,000 per month on a going-forward basis to ensure that the website meets the standards demanded by Plaintiff due to the need for ongoing maintenance as changes to the website are necessitated (for example, due to products being added or dropped, pricing changes, moving content within the website, etc.). Over just a ten year period, the monthly additional going-forward cost would be $240,000 ($2,000/per month x 12 x 10).

23. Again, it is not within Plaintiff's control to limit the cost of bringing a website into ADA compliance; if there is an order for compliance, the cost is the cost. The cost of modifications to the website requested by Plaintiff must be included in the total amount in controversy. Even standing alone, this cost vastly exceeds the $75,000 jurisdictional threshold.

### 2. The Non-Attorney's Fees Damages Sought by Plaintiff Alone Place the Amount in Controversy *Well* Over $75,000

24. In addition, the amount in controversy in this case vastly exceeds $75,000 even if one were to consider only the non-attorneys' fees damages placed in controversy

by Plaintiff.  More particularly, Plaintiff alleges that the purported "access barriers [he] encountered on Defendant's website have caused a denial of Plaintiff's full and equal access *multiple times* in the past, and *now deter Plaintiff on a regular basis* from full access to Defendant's website."  (Complaint ¶ 22 (emphasis added).)  Plaintiff also alleges that "the last time Plaintiff attempted to do business with Defendants was in or around late 2020," that he encountered barriers then, and that "[d]espite *past and recent attempts* to do business with Defendants on their Website," he was denied due to access barriers.  (Complaint ¶ 47 (italics added).)

25.   Plaintiff purports to "expressly limit[] the total amount sought for every single offense to $34,999 or less."  (Complaint ¶ 52.)  Given that Plaintiff has alleged "multiple" offenses in the past and multiple "past and recent attempts" where he was denied access, these allegations in the Complaint alone places the amount in controversy at more than the $75,000 jurisdictional threshold.  While Plaintiff is clearly alleging more alleged "offenses" in the past, even if there were just two alleged offenses *in the past,* this combined with current alleged deterrence (which constitutes a separate Unruh Act offense) would alone raise the amount at issue to $104,997 ($34,999 x. 3).

26.   Furthermore, in an email to Defendant's counsel responding to a request for clarification of the dates of the alleged offenses, Plaintiff's counsel claims that Plaintiff "attempted accessing the Website *at least four times* starting in January 2020 through October 2020 (italics added)" before filing the present lawsuit, which means that the non-attorney's fees damages in controversy are $139,996 ($34,999 x 4), placing the amount in controversy well over $75,000.  As noted above, in addition to the actual visits to the website, Plaintiff also alleges that he is deterred from full access (which would constitute another Unruh Act offense), which means that the amount of non-attorney's fees damages placed in controversy by Plaintiff is at least $174,995 ($34,999 x 5), without considering the amounts placed in controversy by Plaintiff's request for attorney's fees and by his request for, and the cost of complying with, an injunction.

27. On top of the foregoing with respect to non-attorney's fees damages, the Unruh Act provides that anyone engaged in discrimination of the type alleged in the Complaint (*i.e.*, violations of Civil Code § 51) may be liable for "up to a maximum of three times the amount of actual damage ... ." (Civil Code § 52(a).) Such treble damages are awardable as a penalty for intentional and morally offensive conduct. *Botosan v. Fitzhugh*, 13 F.Supp. 1047, 1052 (S.D.Cal. 1998). Treble damages and punitive damages are generally included within the amount in controversy when the plaintiff is permitted to recover those damages under applicable law. *See Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount" (footnote omitted)). In the present case, Plaintiff has alleged that Defendant has "engaged in acts of *intentional* discrimination" (Complaint ¶ 51 (italics added)) and that "Defendants' actions constitute *intentional* discrimination against Plaintiff on the basis of a disability" (Complaint ¶ 61) (italics added). More particularly, Plaintiff accuses Defendant of such reprehensible conduct as (a) *intentionally* constructing and maintaining a website that is inaccessible to visually-impaired individuals, (b) *intentionally* failing to construct a website that is sufficiently intuitive so as to be equally accessible to visually impaired individuals, (c) *intentionally* opting to maintain its website in such an inaccessible form despite well-established and readily implementable industry guidelines, and (d) *intentionally* failing to take actions to correct alleged barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, even after being put on notice of the discrimination that such barriers may create for visually impaired individuals. (Complaint ¶¶ 51, 61.)

28. Plaintiff is clearly placing in controversy such treble damages given that Plaintiff has pleaded *intentional* discrimination based on disability, including alleging the acts described above, and has stated in his Complaint that he is seeking "such other and further relief" as deemed "just and proper" and has not stated that he is not seeking treble

damages. (Complaint at 17:3-4.) Although Defendant denies Plaintiff's allegations, taking them as true for purposes of determining the amount in controversy, Plaintiff has clearly placed much more in controversy than $75,000. As noted above, Plaintiff is claiming four past violations, plus present deterrence, for total non-attorney's fees damages of $174,995. Trebled, this amount is a staggering $524,985. Even if Plaintiff was alleging only *one* Unruh Act violation, the non-attorney's fees at issue, trebled, would be $104,997.

### 3. **The Attorney's Fees Sought by Plaintiff Alone Place the Amount in Controversy *Well* Over $75,000**

29. The amount in controversy in this case also exceeds $75,000 based on the attorney's fees placed in controversy by Plaintiff alone. That is, Plaintiff's prayer for attorneys' fees alone satisfies the $75,000 jurisdictional threshold. (Complaint ¶ 65 and at 16:26-28.) Attorney's fees are properly considered in the analysis of the amount in controversy. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for attorneys' fees are to be included in amount in controversy, regardless of whether award is discretionary or mandatory). As noted above, the Unruh Act provides for an award of attorney's fees to a prevailing party asserting an Unruh Act claim such as that asserted by Plaintiff in the present case. (Cal. Civil Code § 52(a).)

30. Should this matter proceed to trial and Plaintiff prevail, Plaintiff's attorney's fees will more likely than not exceed $75,000, particularly inasmuch as taking this matter to trial will involve significant discovery and law and motion practice, expert consultations, expert depositions, and trial with both liability and damages contested. Prosecuting an individual Unruh Act claim can lead to a recovery of more than $75,000 in attorneys' fees. *See Engel v. Worthington*, 60 Cal. App. 4th 628, 635-36 (1997) (finding $80,875 in attorneys' fees for recovering $250 in Unruh damages to be reasonable). Thus, by seeking attorney's fees, Plaintiff has placed more than $75,000 in controversy. Even if one were to not consider at all the injunctive relief or the non-

attorney's fees damages sought by Plaintiff in terms of calculating the amount in controversy, the amount in controversy would surpass the jurisdictional threshold based solely on Plaintiff's claim for attorney's fees.

### 4. Summary Regarding Amount in Controversy:  All Totaled, the Amount in Controversy is At Least Several Hundred Thousand Dollars, and is in Reality Closer to One Million Dollars

31. The $75,000 amount-in-controversy threshold is unquestionably easily met in this case. The amount of attorney's fees placed in controversy by Plaintiff alone exceeds $75,000.  The non-attorney's fees damages sought also greatly exceed $75,000, even without considering the fact that treble damages are at issue, which places the amount in controversy at over 1/2 million dollars if one considers only the non-attorney's fees damages.  The value of the injunctive relief sought approaches (at least) another 1/2 million dollars.  Any one of the foregoing satisfies the amount-in-controversy requirement for diversity jurisdiction; it is beyond question that, taken together, the $75,000 threshold is satisfied *many times over*.

## REMOVAL JURISDICTION BASED ON FEDERAL QUESTION

32. This Court also has original jurisdiction over this action pursuant to 28 U.S.C. section 1331 because the Complaint poses a federal question.  Plaintiff's lawsuit is based, at least in part, on alleged violations of the ADA, 42 U.S.C. sections 12181, *et seq*. (Complaint ¶ 62.)  First, while Plaintiff constructs his Complaint so as to have a heading for only one purported "Cause of Action," for violation of the Unruh Act, the Complaint states two claims, one under the ADA and one under the Unruh Act.  *See* Complaint at 15:27-16:3:  "Defendants' discriminatory conduct herein includes, *inter alia*, [1] the violation of the rights of persons with disabilities set forth in Title III of the ADA and therefore, [2] *also* violates the Unruh Act."  (*Id*. (italics added).)

33. Furthermore, even if a complaint pleads only state causes of action, a state law claim can invoke federal question jurisdiction if it raises a federal issue of law.

*Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312-14 (2005). The U.S. Supreme Court has "recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Id.* at 312. "The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.* Even if Plaintiff's Complaint pleaded only a state cause of action under the Unruh Act, that state cause of action raises an issue of federal law. For example, in his Compliant, Plaintiff alleges "Defendants are further violating [the Unruh Act] because the conduct as alleged herein violates various provisions of the Americans with Disabilities Act ... " (As noted in the Complaint, Cal. Civ. Code § 51(f) provides that "a violation of an individual's rights under the ADA also constitutes a violation under the UCRA.") (Complaint ¶ 62.)

34. Based on Plaintiff's own allegations, an examination of liability under the ADA is necessary to adjudicate his claims. Therefore, as set forth above, his lawsuit raises a question of federal law, rendering removal based on federal question jurisdiction proper.

## VENUE

35. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1441(a), 1446(a) and 84(c), because the county in which the State Court Action is pending is found within this District.

## NOTICE OF REMOVAL COMPLIANCE

36. In compliance with 28 U.S.C. § 1446(d), this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California for the County of Los Angeles.

37. In compliance with 28 U.S.C. § 1446(a), <u>Exhibit A</u> attached hereto contains true and correct copies of all process, pleadings, and orders served upon Defendant in the State Court Action, which papers include a copy of the Summons and Complaint.

38. The undersigned, as counsel for Defendant, has read the foregoing and signs this Notice of Removal pursuant to Rule 11 of the Federal Rules of Civil Procedure, as required by 28 U.S.C. § 1446(a).

WHEREFORE, Defendant prays that the above action now pending against Defendant in the Superior Court of the State of California for the County of Los Angeles be removed to the United States District Court for the Central District of California.

DATED: February 18, 2021          **THE KARLIN LAW FIRM, LLP**

By:   /s/ Rex T. Reeves
　　　Rex T. Reeves
　　　Attorneys for Defendant
　　　Lifetime Brands, Inc.